Will the clerk please call the next case? 3-22-0261 D. Construction, Inc. v. Illinois Department of Transportation, Appellant. Mr. Jacobson, you may proceed. Thank you, Your Honor. I just want to confirm that you can hear me. Yes, we can. Thank you, and may it please the Court, Assistant Attorney General Ben Jacobson, on behalf of Appellant, Illinois Department of Transportation. There are a lot of issues involved in this appeal, and I'd like to start, if I may, with the first set of those issues, which go to the Circuit Court's legal errors in granting deconstruction judgment on the pleadings. Then I can get into the second set of issues, which discuss what this Court should then do with the Department's decision here. And that is not disturbed for several independent reasons. Starting then with judgment on the pleadings, the Circuit Court erred as a matter of law for two reasons. First, by reversing the Department's decision for failure to comply with the Administrative Review Law when that law did not apply. And then there seems to be disagreement here about that issue, and so unless Your Honors have any questions, I'll move on to the second issue. And the second reason that the Circuit Court erred in granting deconstruction judgment on the pleadings is because it based its decision on failure to comply with the Administrative Procedure Act, but the DBE reconsideration decision here was not a PA. So administrative proceeding is only a contested case when it meets the formal definition under the Act, which is that a hearing is required by law before a decision has been issued. And that law must be a statute, regulation, or constitutional provision that is independent from the APA. And here there's no independent legal authority requiring a hearing on the record. Does a federal statute require an opportunity on the part of the contractor to explain its reasonable efforts to a reconsideration officer? So I believe Your Honor is referring to 26.53d, which is explicitly addressing pre-award reconsideration decisions. But here, Your Honor, we're in the post-award context. So there is nothing in the federal statute. This is not a rhetorical question. There's nothing in the federal statute that relates to post-award decisions to address contract issues. No, there are. There is, Your Honor. It's 26.53g, which says that when the contractor, the prime contractor is looking to replace a DBE subcontractor after the award, it has to reach out to the department and explain in writing why it should be able to replace that subcontractor, either with a new DBE or to complete the task itself. And they need IDOT's permission to do that. Yes, exactly, Your Honor. They need IDOT's permission to do so. It has to be in writing. Otherwise, they have not complied with the regulations and they haven't demonstrated good faith efforts to meet the DBE goal. Can you explain to me? I don't like acronyms. DBE, is there a language attached to those initials? Yes, Your Honor. It's disadvantaged business enterprise, which means that the ownership, whether that is... Well, I get what it is. I just want to make sure, you know, we've got APA, we've got all of that sort of stuff, you know. Okay. Yes, Your Honor. Mr. Jacobson, I have a question before you go on. It harks back to the first issue. Has IDOT expressly adopted the provisions of the... I'm sorry, the provisions of the Administrative Review Act? Not in this context. Cited in our brief, I believe that there are some decisions under one of the Highway Transportation Acts, that some of those decisions are expressly adopted for adopting the ARL, but not in the context of making these DBE reconsideration decisions. Okay. So, we're into DBE only, correct? Yes. Okay. And so, there's no historical tradition of doing that, or is there any statutory enactment that provides for that? Provides for review of those decisions, Your Honor? Yes. Yeah. No, Your Honor. As far as I'm aware, the only... there is no Illinois statute that governs the review of those decisions. In the federal regulations, there's only the requirements in 26.53 D and G, D which goes to pre-award reconsideration decisions, and G which goes to post-award reconsideration decisions. So, post-award means giving the contract to a DBE, correct? Not necessarily. The contract is awarded to a prime contractor, and then in that contract, it has a requirement that a certain percentage is subcontracted or otherwise completed by a DBE. So, if the prime contractor was a DBE, then presumably its fulfillment of its obligations under the contract would meet. What we're saying, in effect, just to make it simple, deconstruction is held to be in violation because they treated this other DBE as a pass-through by their actions? Yes, Your Honor. And that goes more to the second set of issues, which I'm happy to address further, and that goes to the merits of this decision here. But I'm happy to talk about that if that context will help clarify everything, because I recognize that there's a lot going on here. The statute that I'm looking at is a more general one. It's a section of the administrative review law. Yes, Your Honor. Section 3-102, and it says, this article shall apply to and govern every action to review judicially a final decision of any administrative agency where the act creating or conferring power on such agency by express reference adopts the provisions of this Article 3 or its predecessor. And it looks to me like the agency, like IDOT had to adopt the provisions of the administrative review law, or am I reading that wrong? No, you're exactly right, Your Honor. The ARL only applies where it's been expressly adopted by the statute under which the agency is operating, and we don't have that here. The general IDOT authorization statute does not adopt the ARL for all IDOT decisions, and the state statute that adopts and enacts the federal regulations and law in Illinois, that also does not adopt the ARL. So the ARL does not apply here. And that's undisputed? I believe so. I believe the co-counsel can confirm that, but if you look at their response brief, they don't seem to disagree with that proposition. Well, you made that claim early on, Your Honor. Yes. Okay. Yeah, I don't... Before you move on, so why can't 26.5 G's post-award consideration, why can't that statute include consideration of the question whether the prime contractor has breached the contract in its representations with respect to a DBE? If... I just want to make sure I understand Your Honor's question. Well, your position... Well, okay, it's probably inart... Maybe I asked it inartfully, but your position is that the post-award consideration that can potentially be raised, it would not include the concerns raised by IDOT here that resulted in the reduction in what was going to be paid in the contract. Why? Because if you look at the language of 26.53 D, it is explicitly about when the contractor wants to replace the DBE. And that's the only issue as it relates to that subject? I believe so. That is my understanding of the regulation, Your Honor. Okay. But regardless, even if that or the provision, the provisions of 26.53 D, which are the pre-award processes, even if either of those explicitly applied here, that still wouldn't constitute a contested case because it is... Neither of them requires by law a hearing on the record before a decision is issued, nor do they have any of the other hallmarks that we tend to look for when identifying if it's a contested case, which are the kinds of things that we think of with traditional court proceedings. So why did IDOT afford deconstruction the opportunity of a contested hearing then? Because it seems very much that they did. Well, I think the procedures that they allowed do not constitute a contested hearing. As a matter of the Administrative Procedure Act, they required only that an opportunity to meet with the reconsideration officer in person to explain and discuss the written evidence and argument that they've provided. And then a written decision that explains. You're referring to what the statute requires. I'm referring to what actually happened, if you will. That is to say, five witnesses were called, they testified, which seems to go far afield from what 3D, for example, contemplates. Well, Your Honor, the amount of process that was provided here may have been more that was required, but that just shows that deconstruction was given its opportunity to present its side of the story. And then the ALJ weighed and balanced that evidence and made its factual findings and reached its conclusions. How do we know that? So getting to whether or not the record is sufficient, I think the transcript is mostly irrelevant. The evidence that deconstruction has identified as being presented by the witnesses that it called to the hearing, that evidence is not relevant to the core finding of what the ALJ and the department reached here, which was that CBD was a pass-through from the get-go. So from the beginning, deconstruction did not intend to actually have CBD complete a meaningful material function in this project. And that's because deconstruction was the one who negotiated with Veritas on the price. They told CBD to use Veritas for its supplies of materials. They negotiated for the delivery. And CBD effectively was just passing the money from deconstruction to Veritas. And then Veritas was passing the materials to CBD to then pass along to deconstruction. So there was no meaningful control by the subcontractor CBD of the functions that it was supposed to complete under the contract. And that's the core element for determining if a subcontractor is completing a commercially useful function under the federal regulations. And if the subcontractor is not completing a commercially useful function, then the prime contractor has not demonstrated good faith efforts to meet the DDE goal because they are using that subcontractor as a pass-through to give the appearance of meeting that goal. And, you know, with the, I also like to highlight that even if deconstruction or IDOT provided this additional process here, it still doesn't have the hallmarks of what we think of with a traditional hearing on the record. The ALJ's decision was very explicit that IDOT, or that deconstruction was allowed to present any evidence it wanted without the rules of evidence applying. And there were none of the other civil procedure requirements that we typically see. So you think that's the characteristic of a contest, right? A contested case, yes, your honor. It's required by law that there's a hearing on the record. I understand that. But now you're saying none of that constitutes a contested case, right? Yes, your honor. Some of the other things that the courts have looked to and are cited in our briefs to identify whether a contested case occurred are things like some of the rules of evidence applying and some of the other kinds of civil proceedings procedure that we see in the circuit. So you're saying that constitutionally, as you know, in Illinois, that every wrong there is a remedy, correct? Yes, your honor. So go ahead. Just because this is not a judicially reviewable decision in the circuit court doesn't mean that there is no remedy and there is no oversight. And I see that my red light is on. Well, why don't we go with that just a minute. So what is the remedy and what's the oversight over a sham hearing in IDOT? So there's two ways to get review and another level of oversight. So the two ways to get review, as we argued in our brief, this is a contract-based claim against the state. And so the deconstruction can go to the court of claims and bring its contract-based claim there against the state. Alternatively, if this were truly a sham hearing and there were a constitutional violation, then that is a separate claim that can be brought in the circuit court against the state. But that is not what deconstruction has alleged here. So we don't have that at issue. And then we also have to take a step back and think about the fact that this is an overall program that is being administered by IDOT under federal oversight. And so just as IDOT audits each of these contracts once they're completed, the Federal Department of Transportation audits the state's administration of this program to ensure that the state is complying with the federal regulations, because this contract was at least partially funded by federal dollars. And if there's no compliance, then the state loses that money. So there's a big incentive for the state to comply with the federal regulations. Thank you. Any questions or further questions from the court? No. Could deconstruction complain to the Federal Highway Administration about this issue if they wanted to? I don't have a definitive answer for you. I know that under the regulations, it does say that these reconsideration decisions are not administratively appealable to the Federal Department of Transportation. So I believe the answer is no. All right. Well, I know that 26.55C says that as it relates to the Federal Department of Transportation, but doesn't it also say, and I'm... I thought it suggested at least that it could be appealed to the Highway Administration. I could be wrong. I'll take a look. I don't have that answer, Your Honor. And of course, we would be happy to provide supplemental briefing to dig into that. That might be premature. All right. So in any event, I do not have any additional questions, Justice Holdredge. Okay. Very good. Okay. Thank you. You'll have time in reply, Mr. Jacobson. Mr. Heathcock, you may respond. Hope your sound is off. There we go. I'm going to start that again. Thank you, Your Honor. And may it please the court. My name is Doug Heathcock. I'm the attorney for the Appellee Deconstruction. Your Honors, this has become a very complicated case, seemingly on appeal, but it was very simple in the trial court. And it's remarkable how it's transformed after the entry of judgment. And I want to start looking at that because I believe it's important. There are two things I'd like to address. One is that the decision of the trial court was correct, and it should be affirmed by this court because the record was inadequate. The second point I'll make is that none of the new arguments made by IDOT or the AG's office on appeal changed that outcome in any significant way. So, Your Honors, what the trial court found, to be clear, and I'm looking at the trial court's judgment order, was that IDOT has failed to provide an adequate record for the court to properly review the decision. And the court says, perhaps it would be more accurate to say that the court finds in favor of deconstruction on its complaint for administrative review because there is no adequate basis in the record to affirm. There was no adequate basis because half of the equation was missing in the trial court.  Can I ask a question that goes, I think, to the heart of what you're suggesting? So, in your brief, you provide a rather detailed summary of these five witnesses' testimony, which, of course, we don't have the benefit of a transcript. It seems to me, though, that it'd be fair to characterize that testimony for the most part as steps deconstruction took to try to get CBD to be compliant, to get the money, things along those lines. CBD is failure to perform, if you will. But how does any of this so-called missing testimony or transcript relate to the issue over which IDOT decided to reduce the contract amount, specifically whether CBD performed a commercially useful function? I mean, none of the missing testimony that you suggest was critical and that the trial court said was missing seems to have gone to that issue. So, why was that testimony necessary or why was its absence prejudicial? Your Honor, it was prejudicial because without the transcript, we're all talking in generalities about what that evidence was. It's important to realize that deconstruction, when they were told four years after they completed the work, by the way, two years after it had been approved, they were told that there was an issue about their subcontractor. And they were told, you have five days to present evidence, five days to request a hearing. And it wasn't called an informal meeting, by the way, it's called a reconsideration hearing. So, we timely requested that reconsideration hearing and then we provided evidence to the reconsideration officer. Now, in the record that was filed, you have in that record filed with the circuit court, a full timeline created by deconstructions, about three pages long, and many pages of backup showing what was done with this particular subcontractor and what CBD did wrong and to the court's point, how we tried to remedy that. But also included in that is the fact that when they were approved as a DBE contractor, they did so as someone who was ordering under a bid that deconstruction had from Veritas. In the subcontract that submitted to IDOT before the contract was awarded, where we have to show who all our subs are in order to make sure we've met the DBE quotas, we've got the contract. The contract says on the contract itself, you're going to follow, you're going to have $690,000 worth of steel you're going to order, and you're going to do that according to this contract we have with Veritas or this quote we have from Veritas. Now, I raise that because we do not agree this was a pass-through. We think that is completely factually wrong. And the testimony that was provided by these five witnesses included the testimony of our project manager, who said that was not it. The scope of the work was we were going to order through CBD, who's out of Ohio, is an approved subcontractor approved by IDOT. IDOT keeps a list of people we can use. So we go to the list that IDOT says these people are fine, and we pick one. It was not a pass-through because we didn't just give them the money that they had to pay to Veritas, who is the steel supplier. We paid them more than that, considerably more. That's not in the decision. That's not in the record that they filed. That's in the documentation we provided, but it's not mentioned by the reconsideration hearing officer. And it's also part of the testimony about what our scope was, how we contracted with them to do it, why they were approved under this scope to begin with, and how they failed to fulfill it. Now, they failed to fulfill it by stealing our money, and I don't, I mean that as a term of law. It really was conversion and fraud. I handled the lawsuit against them in Will County, and we obtained a judgment against them for $380,000. Subsequent to obtaining that judgment, we tried to collect it in Ohio, and they filed for bankruptcy, and it went downhill from there. But this is not only a problematic subcontractor. The decision says they were like a troubled contractor. No, they stole money from us. So this whole thing is really salt in the wound. But to the court's question, we don't agree that they were past due. We paid for them to get the steel. We paid for them to fabricate certain slider plates. We had another contract for them to do something else. So they were doing other things in addition to just getting this steel. They got a portion of the steel, and then they pocketed the advance to them and kept it, including the additional amount we had paid them for their contractor markup, because it was not a pass-through. So I want to dispel that notion right away. And we spent time bringing five witnesses to the hearing in order to make that clear and provide the evidence. None of our testimony appears in the decision, the written decision of the reconsideration hearing officer, and that's all that was provided to the the circuit court in 2015. The testimony that I tried to describe, knowing that the circuit court is not supposed to look outside of what's in the record when it's doing its administrative review, I did just to show you can't do this with half the equation. This is similar in some ways to the decision of Miles v. Housing Authority of Cook County. It's a 2015 first district decision that we cite in our brief. And what's critical about this is this is not a case that was under the administrative review law. It's not a case that was a contested hearing. It was an informal hearing. The important thing is it didn't matter. It was still the obligation of the agency, the housing authority in that instance, to provide something that the circuit court could review, and they failed to do so. The court very specifically said of that, and I quote, a manifest weight of the evidence inquiry requires two things, the findings of fact and the evidence. We have only been provided one of those two things. That's this case. We've got the decision. We don't have any of the evidence. And this gets more absurd as you get into it because in the trial court, we filed this matter in the trial court, and we brought it under the administrative review law because the decision of the reconsideration officer said this is reviewable under administrative review. So we brought it that way. IDOT, represented by the attorney general's office, did not contest that the ARL applied. They went right along with it and filed their answer under the ARL. You would agree now the ARL does not apply, right? I mean, there's not any question about that. Yeah, your honor, I'm forced to simply because of the backwards nature of this. But I mean, the fairness aside, hate to say that, but I mean, the ARL, at least, you still have a writ of certiorari. We have other issues, but ARL is not correctly the mechanism by which to. I haven't found that it applies. And if I may quickly, I know my time is short here, but that's not supposed to happen. Under the Administrative Procedure Act, section 10-50, which was amended in 2019, it was amended to require every agency, regardless of whether the ARL applies, to do two things in rendering its agents' decisions. It has to, it says in sub B, all agency orders shall specify, one, whether they are final and subject, strike that, I misspoke. There's no wording. All agency orders shall specify whether they are final and subject to the Administrative Review Law, capital A, capital R, capital L. This started out wrong with IDOT at the reconsideration hearing. When they entered the decision on the last page under the heading, Right to Appeal, on sub eight, it says, this decision is administratively final and subject to review. That's half of what they're required to do under the Administrative Procedure Act. The legislature tried to take away the gotcha of agencies saying, you can review it, but we're not going to tell you why. You have to, as a matter of law, tell us whether it's appealable under the Administrative Review Law. They didn't do that. So yes, we filed under the Administrative Review Law, and as the court correctly points out, it doesn't matter. That becomes a writ of cert. And the same standards apply for a writ of cert as applied to the Administrative Review Law. We've cited the case law, it's clear, and IDOT agrees with us on appeal. In their appellate brief, they agree that the standards are the same under the ARL or a writ of cert. So to your point, Your Honor, it looks like run a writ of cert, because I've been required as the attorney for a contractor to go back to find the enabling statutes of IDOT. I haven't found them. The AG's office hasn't found them, so I guess it doesn't apply. That's not supposed to be the way this operates. We get to the trial court, though, and the trial court has nothing to review here. And that's remarkable. Again, going back to this Miles decision, which I referred to in our brief, the court there said, in response to an argument, we didn't have to keep a record. We didn't have to provide a transcript, said the housing authority. The appellate court said, quote, we do not think it's asking too much of an administrative body whose decision is subject to judicial review to provide an adequate record for the court so that the judiciary can perform its task of ensuring that the administrative body complied with due process and supported its decision with competent evidence. And again, I'm not going to keep reading to you from that decision. You have it. It's interesting because in the trial court, there's no dispute about this. Matter of fact, the AG's position is we need to find the transcript. They looked for six months for the transcript. We continued this case five times so they could find the transcript, agreeing that they had to have it. They did not find it. And so what they did was they filed a motion themselves seeking to remand the case is the solution they wanted. They never once before argued that we don't have to have a transcript. They argued the opposite in their motion to remand that they filed the trial court. They cited a case law that said remand is appropriate when the record produced as a result of the administrative process is clearly inadequate. Further findings of fact are required or the agency has failed to sufficiently explain the we say that we have the subject matter jurisdiction to review. What is it we're reviewing? And actually, my real question is, what factors are we considering in determining whether the agency correctly made a decision? What is it that we're supposed, we can't substitute our Because of IDOT's conduct, your honor, you can't review it. What is there to review? This is what the trial court said. You have it. What statute or case law tells us the factors we're supposed to look at to decide whether IDOT made the right decision? Let's assume we had a transcript. What is it that we are supposed to judge this up? You would have to go to the federal regulations because IDOT... And which federal regulations? The ones we were talking about, 26, the FDG, the ones... Do either of them apply to a post-award? Do either of them apply to this question? No, they only apply because IDOT says they do. IDOT has created this hybrid Frankenstein's monster of an administrative proceeding that makes no sense. It's taken the pre-award federal regs and said, unilaterally, we're going to apply the post-award. There is nothing that they have shown me or that I have found that shows why these applied post-award. But that's... The other side of that coin is that if IDOT had chosen, they wouldn't have to give you anything. Any hearing. In other words, okay, they gave me a hearing, but if they didn't have to, do we have a basis to review anything? Well, and that's their point now on appeal for the first time is it was gratuitous. I get that, but let me ask you that question because I think we have to answer it. Yeah. Let's assume it's not waived. The federal regs require a meeting with a hearing officer. They require them to exercise reasonableness. It's throughout the statute. We cited in our brief five or six times it talks about reasonableness. And they also say, and I'm looking at 2653D, must. They must have the opportunity. There must be an official meeting. They must do this. They must, must, must, must, must, must. So they must do this under the federal regs. Now, if they say, we didn't have to do it, we did. To your point earlier, your honor, they went way beyond what's necessary under the federal regs. They held a hearing and said, you must tell us within five days if you're going to do it. And then you must present all of your evidence ahead of time. And you must tell us every witness who's going to be there. Those witnesses will come and testify. We will keep a record. In our motion, when we started this, by the way, this all came about because the reconsideration hearing officer said this will be recorded. Okay. Now I would say, well, we, you know, they made mistakes and you can't, the administrative agency can't be held responsible for its mistakes. It's ridiculous how many mistakes were made in this. So they offered us what is the effect, in effect, a contested case hearing. Now I will say, looking at the Dyehammer decision and other things that have happened since the court entered this decision, is this a contested case? Well, it says you have to have some statute that requires it to be a contested case. I'm not Please finish your thought. Thank you. They offer you all of these formalities and require all these formalities and have a contractor who just wants to, you know, be paid or not have liquidated damages taken from it to have a hearing. And then after the fact, and after judgment's entered, they say, you didn't really have a right to a hearing. We didn't really have to answer that. And it was a contested case. I will end just by saying whether it's a contested case under the Administrative Procedure Act or falls under the ARL doesn't matter. It is a distinction without a difference because this is a writ of certiorari by default. And the writ of cert provides the same review and they've given nothing to the court to review. This can't possibly be the standard. Can I ask just one quick question? Um, was there any discussion from anyone about a bystanders report or something? Uh, there was not. There was some discussion about whether or not that could be done. It wasn't pursued. Again, they, I doubt immediately said, we want you to remand it so we can have a second hearing. And this time we'll keep a transcript. We'll make a record of it. Again, it's an admission that that's what they should have done the first time. And the court said, that's unworkable. That's not fair and address that in its decision. So there was never any serious discussion about a bystanders report. No. Okay. Thank you. And I know your time's up, but I apologize, Justice Holdren. I do have one other question. No apology. Even if, which I believe it is, this is a writ of certiorari situation. There still has to be a contested case for something to be reviewed. And maybe that's, maybe another way to ask that question is there has to be some basis in statute for us to weigh or decide whether the IDOT abused its discretion. I mean, what are we looking at? If you get to that point, you are looking at federal regs, including appendix eight of part 26 of the federal regulations, 49 CFR section 26. That has the standards in there that says, this is what the agency who's getting federal money will do with its pre-contracting DB program, which is being applied post-contracting now. But it says things like in number one, the appropriateness to the check could reasonably be expected to obtain sufficient DBE participation, even if they were not fully successful. So how can you get, how can you take steps to get DBA doing its job when the determination by IDOT was it was a pass-through situation? I mean, how do you can't, if IDOT's correct, this was nothing other than a pass-through situation, there's nothing DBE can do to fix that or that, or for that matter, deconstruction can do to fix that. Well, your honor, I would disagree in that. If it was a pass-through, it was the same situation before the contract was issued. Again, these regulations are set up to catch this before the contract is awarded. We presented them with the contract, with a purchase order that said, we're using this basis. And again, I know my time is up, I'm not going to go on, but this Doolin report is at least double hearsay, that this is the only thing they're relied on, by the way, which we didn't have until after this was all filed. That being said, they have said that it was a pass-through. If that was the case, before the contract was issued, they should have told us this is a pass-through. Then everything else that's in the federal regs gets triggered. And we have the ability to replace that contractor or to modify how we're using them and still be awarded the contract and still move on. What's remarkable, what's crazy in some ways here is this job was done. The work was completed and the work was fully accepted. There is no question that I got the full benefit of the bargain from deconstruction performing the work. There's also no dispute that deconstruction paid $300,000 plus out of its own pocket to keep their schedule. It paid for this deal twice because this sub stole our money. Four years after the work was done is the first time they said, we think this was a pass-through. The reason there is no real way for us to respond other than showing what we did previously is the horse is already out of the barn. This is done. You've been using the roadway and the bridge for four years, and now you're going to tell us it was a pass-through. Despite that, we presented evidence in the hearing, both testimonial and documentary evidence showing it wasn't a pass-through, showing it was not a pass-through, that with a legitimate subcontract they were performing other commercially useful functions, which is the requirement. That's not even mentioned in the decision. Nothing about our testimony or documents is missing. To your point, it makes it tough on us. Even in these odd situations, these odd circumstances, deconstruction still satisfied its burden. Okay. Thank you, Mr. Heathcock. Thank you, Judge. Mr. Jacobson, you may reply. Thank you, Your Honor. I'd like to start with one of the points that Justice Brennan raised. It's that before we even get to whether or not the record was sufficient, we have to determine whether or not there's subject matter jurisdiction here. And moving past the ARL and the APA issues, these contract-based claims are barred by sovereign immunity. These are claims that are based in a contract. The relief that they're looking for is liquidated damages based in a contract, and contract-based claims can only be brought in the court of claims. There is no subject matter jurisdiction in the circuit court. Even if there were, this decision, as you alluded to, Justice Brennan, again, is a completely discretionary decision of the department. It's very typical for contract-based decisions, decisions about the awarding, the monitoring, and the auditing of contracts, to be of executive discretion. That's very common, and that's exactly what we have here. It's review of these decisions in the monitoring and auditing of a contract. And then if we look to the specific language of the regulations, that appendix that my colleague was talking about, and I agree that that is the language that we have to look to here. It repeatedly uses the term judgment call. All of the terms are vague. It's explicit that all of the information it's exclusive. And so alternatively, this decision shouldn't be reviewable through a writ of certiorari because it's fully discretionary. There is nothing for the court to review here. I have a couple other points I wanted to hit. So just naively, where do you go? You've said you've given us a review standard implicitly called abusive discretion, right? Are you saying if this were judicially reviewable, then it would be for abusive discretion? Yes. I think if the court does hold that this is judicially reviewable, that it's not a fully discretionary decision, then yes, given the discretionary nature of these DBE reconsideration decisions, it should be under the abuse of discretion. But let me ask you this. You've What does that mean? It means that- Non-reviewable? Non-reviewable. Yes, your honor. So we have non-reviewability, period. Yes, your honor. And that is, if we can look to the Supreme Court's decision in Hanrahan to see a very similar situation where the language of the statutes and the regs really left this decision up to the full discretion of the agency. And when we look at those in comparison, we see that this decision was supposed to be left to the agency's full discretion. Regarding Section 1050 of the Administrative Procedure Act that my colleague cited, I believe that that only applies when there is a contested case. And as we've seen, and going to Miles, Miles is distinguishable here. There were actual fact disputes in Miles, whether the individual lived in a house and whether there was criminal conduct that occurred. And there was, and here we don't have fact disputes because deconstruction is only identified testimony that is not relevant to the core finding as you identify, Justice Brennan, the core finding that we have here. And then I also wanted to note the decisions that the circuit court relied on, Board of Education v. Kiwani. There was no record there and the cases that it cites, that was the same situation. There was absolutely no record and that's not what we have here. What we have here is part of the record. And the question is whether that part of the record is sufficient to allow meaningful review. And it is for the reasons that we've discussed that it goes to the core finding here and deconstruction has not identified missing evidence that goes to that core finding. And then to the extent that IDOT did say in its administrative decision and in the court below that it did say that the ARL applied, that has no legal significance in terms of whether or not the ARL actually does apply. The ARL applies or it doesn't. And this court is not bound by the erroneous statement of law by an agency and you know, a nostra culpa here that was a mistake. It should have been caught, but that doesn't change the fact that there is no subject matter jurisdiction under the ARL. And so for all the should reverse the decision of the circuit court and affirm or and dismiss the complaint or affirm the director's final decision. Any questions from the bench? Not I. Nor from me. Okay, well thank you counsel both for your arguments in this matter. This afternoon it will be taken under advisement. A written disposition shall issue. At this time the clerk of our court will escort you out of our remote courtroom.